
# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs January 18, 2017

## STATE OF TENNESSEE v. ALVINA TINISHA BROWN

**Appeal from the Criminal Court for McMinn County**
**No. 2014-CR-99     Sandra Donaghy, Judge**

---

### No.  E2016-00314-CCA-R3-CD

---

The Defendant, Alvina Tinisha Brown, was convicted by a McMinn County Criminal Court jury of tampering with evidence, a Class C felony, misdemeanor possession of marijuana, misdemeanor possession of alprazolam, and possession of drug paraphernalia, Class A misdemeanors.  *See* T.C.A. §§ 39-16-503 (2014) (evidence tampering), 39-17-418 (2010) (amended 2014, 2016) (misdemeanor possession), 39-17-425 (2014) (possession of drug paraphernalia).  The trial court sentenced the Defendant as a Range III, persistent offender to an effective fifteen years.  On appeal, the Defendant contends that (1) the trial court erred by denying her motion to suppress, (2) the evidence is insufficient to support her tampering with evidence conviction, and (3) the tampering with evidence sentence is excessive. Because the evidence is insufficient to support the Defendant's conviction for tampering with evidence, we reverse the judgment of the trial court, vacate the conviction, and dismiss the charge.  We affirm the remaining judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Reversed in Part; Vacated in Part; Dismissed in Part

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Chessia A. Cox, Athens, Tennessee, for the appellant, Alvina Tinisha Brown.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Stephen Crump, District Attorney General; and Tammy Harris-Crayne and Paul D. Rush, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case arises from the discovery of drugs and drug paraphernalia inside the Defendant's purse during a traffic stop. At the trial, McMinn County Sheriff's Deputy Blake Witt testified that on March 9, 2014, he assisted the McMinn County Drug Arrest Response Team, which was serving a search warrant at a house. He said that while he was driving toward the house, he received a radio call regarding a beige car that left the house. He stated that he saw a beige Chevrolet Malibu with two occupants pull out of the driveway, that he and Sergeant Tommy Allman followed the car, and that he activated his blue lights because the driver was not wearing a seat belt. Deputy Witt stated that Eugene Johnson was the driver and that the Defendant was the passenger. Deputy Witt said that Mr. Johnson did not have a valid driver's license and had an outstanding warrant for extradition to Georgia.

Deputy Witt testified that the car was stopped in the middle of the road, that he asked the Defendant if she had a driver's license, and that she did not. Deputy Witt said that in cases where the owner was unable to move a car from the road, he performed an inventory search, recorded the contents of the car in a log, and had the car towed. He stated that during the inventory search, he found two packs of rolling papers, which he said were commonly used to roll marijuana cigarettes, and a "blue snort straw" made from an ink pen behind the gear shift in the front center console. He said that one pack of rolling papers was on the front driver's side floorboard and the other was on the front passenger-side floorboard. He stated that he recognized the straw as one commonly used to snort powdered pills because it had white residue on both sides and was of a certain length. He said that he did not find loose tobacco or any other material that could have been used to fill the rolling papers. Deputy Witt stated that he asked Deputy Paul Johnson to handcuff the Defendant until Deputy Witt could determine to whom the drug paraphernalia belonged. Deputy Witt said, though, that the Defendant was not under arrest at that time.

Deputy Witt identified a video recording taken from Sergeant Allman's police cruiser, which was received as an exhibit and played for the jury. In the recording, a Chevrolet car with its doors open was stopped in one lane of a two-lane road. Six men stood around the car, and a woman, later identified as the Defendant, was handcuffed and facing the front of the car. Several small items had been placed on the hood of the car, including a purse. A deputy, later identified as Deputy Paul Johnson, dragged the Defendant backward and onto the ground, at which point she was no longer visible. Deputy Johnson said, "Get your f------ hand out [of] the m-----f-----," and told another deputy that the Defendant had a bag. The Defendant repeatedly asked to be "let up," denied having a bag, and denied having done anything. One of the deputies said he saw a bag in her front pocket, said "There's you a pill," and handed another deputy something. The Defendant promised that she did not have anything. Deputy Johnson told the Defendant she could not sit up because she had something, and the Defendant denied

-2-

having a bag and said Deputy Johnson could look in her pockets. Deputy Johnson commented to another deputy, later identified as Sergeant Allman, that he did not know where the bag went. The Defendant sat up, and her head and upper body were visible. Sergeant Allman told the Defendant that a female deputy was on the way. Deputy Johnson told the Defendant that they were not trying to hurt her. Deputy Witt began to search the purse on the hood of the car and pulled out a black bag. The Defendant asked if the deputies were going to steal her money. A deputy asked the Defendant why she had scales, and she responded that she had been on her way to sell jewelry.

An unidentified deputy told Deputy Witt that he also "had tampering with evidence." The Defendant asked with what she had tampered, and the deputy responded that she had placed a bag in her pants. She reiterated that she did not have a bag in her pants. Deputy Johnson looked at Sergeant Allman and pointed toward the ground behind the Defendant. The Defendant asked with what was she being charged and asked to be allowed to get up because she had a fractured arm. Deputy Johnson walked away from the Defendant momentarily, the Defendant's shoulders shifted, Sergeant Allman pointed at the ground behind the Defendant, both deputies took hold of the Defendant's hands, and one of the deputies told the Defendant to open her hand. She said, "I'm going to give it to you, please don't," and Deputy Johnson and Sergeant Allman held up the Defendant's hands and pried something from her left hand, which was in a fist. The Defendant denied that she had been tampering with or trying to hide evidence, and she said that she was trying to pull out and give the deputies what she had. She stated that she had told the deputies she smoked marijuana and that she possessed marijuana, and she promised "on [her] children" that she did not have any more. She volunteered to "shake [her] bra out" to demonstrate she did not have more drugs. Sergeant Allman loosened the Defendant's handcuffs, and she told him that she only used "pills and weed." Although the recording's sound was turned off momentarily, the Defendant, Deputy Johnson, and Sergeant Allman appeared to converse. The sound resumed, and the Defendant told the deputies that she had always been cooperative. The sound stopped again, and when it resumed the Defendant said, "[T]he whole container. Not the weed, of course, that's mine." The Defendant asked if "they" had to take her to jail, and Deputy Johnson answered affirmatively. The Defendant discussed whether she could be charged with possession of marijuana for resale, and she said that she did not intend to sell the marijuana. She discussed the jewelry she was going to sell. Deputy Johnson removed his microphone pack, and Sergeant Allman returned it to the car. A deputy commented that the Defendant had "tried to tear that bag up." Deputy Witt continued searching the purse and dropped a small object on the ground. He dragged his foot over the object and a bright white mark was left on the pavement.

Deputy Witt testified that in the recording, Deputy Johnson handed him one half of one pill, which was scratched such that Deputy Witt could not identify some of the numbers or letters. He said that the pill was white, oblong, and contained the letters "IP." Deputy Witt stated that he later sent the pill to be analyzed by the Tennessee Bureau of

-3-

Investigation (TBI) laboratory, which identified it as oxycodone. He agreed that the color of the pill was consistent with the residue he observed on the straw from the Chevrolet.

Deputy Witt testified that Sergeant Allman found a torn "off-white colored bag" in the Defendant's hand and that Deputy Witt recognized marijuana inside the bag. Deputy Witt stated that they found two additional small bags of marijuana inside the Defendant's purse. He said that the TBI laboratory identified the contents of the bags as marijuana and that the bag found in the Defendant's hand contained 1.9 grams of marijuana.

Deputy Witt testified that when the Defendant was handcuffed, the deputies placed her purse on the hood of the Chevrolet and that Deputy Witt saw a blue "pill crusher" in plain view inside the Defendant's purse. He said that the razor blade in the pill crusher had white residue on it and that the inside compartment contained white powder. Deputy Witt stated that he searched the Defendant's purse and found a black "sack" containing the two bags of marijuana, scales, a purple "capsule" keychain containing pills, a straw, and a glass tube.

Deputy Witt testified that the Defendant told them she carried the scales to weigh her mother's jewelry and that Deputy Witt did not find any jewelry or other items that would require the use of scales. He said that in his experience, scales were used for weighing illegal drugs and that he classified them as drug paraphernalia. He stated that the straw in the Defendant's purse did not contain residue, that it was too small to be a drinking straw, and that one end of the straw had been cut at an angle. He said that the glass tube had a black lid and that generally, tubes of that type contained powdered drugs, although the tube in the Defendant's purse did not contain any powder. He stated that the purple keychain contained two halves of one blue pill and that the pill was identified by the TBI as alprazolam. He said that he searched the entire car and the Defendant's purse and that he did not find a prescription or a prescription pill bottle.

On cross-examination, Deputy Witt testified that he had never seen rolling papers used to roll tobacco cigarettes, although he acknowledged it was possible. He stated that he did not send the straw for an analysis of the white residue and that he could not identify the residue. He said that the black sack inside the Defendant's purse was closed when he found it.

Deputy Witt testified that during the traffic stop, he heard "a commotion" and saw a struggle in which deputies retrieved an object from one of the Defendant's hands, which were behind her back. He agreed that he did not see how the bag in the Defendant's hand tore. Deputy Witt said that Deputy Johnson "sat [the Defendant] on the ground" and rolled her over and that Deputy Price handed Deputy Witt the white pill. Deputy Witt stated that the deputies removed the pill from the Defendant's hand before it fell on the road. He acknowledged that he did not see the pill before it was handed to him

-4-

and that it could have been in the same condition before Deputy Johnson seized it. He said that the Defendant did not have the opportunity to reach into her purse while she was handcuffed, that he did not open or manipulate the purse, and that the purse had an open top.

A juror submitted a written question to the trial court relative to a portion of the video recording in which Deputy Witt dropped an object on the ground and dragged his foot over it, creating a bright white spot. The question characterized Deputy Witt's action as making a hand gesture, then scraping or rubbing his shoe on a white spot on the ground. In response to the question, Deputy Witt testified that he did not recall what he was doing in the recording and that he would not destroy evidence that could have been used to charge the Defendant.

TBI Special Agent Erica Stoner, an expert in chemistry analysis and narcotics, testified that she analyzed the substances seized in this case and that the plant material was marijuana and weighed 9.19 grams. She said that an additional 3.46 grams of plant material was not tested but was "visually consistent" with the larger sample of marijuana. She stated that the white pill was oxycodone and that the blue pill was alprazolam. On cross-examination, Agent Stoner testified that the lack of the identifying numbers did not create difficulty in identifying the white pill.

McMinn County Sheriff's Deputy Paul Johnson testified that he assisted Deputy Witt by detaining the Defendant. He said that he placed the Defendant in handcuffs and that after he handcuffed the Defendant, he saw a small plastic bag in her hands. He said that the Defendant tried to hide the bag and that he thought the bag might contain narcotics. Deputy Johnson said that he used aggressive language with the Defendant because the traffic stop occurred immediately after a "S.W.A.T." team operation involving kicking open the door of a home and subduing an armed occupant and that as a result, Deputy Johnson's adrenaline was high. Deputy Johnson stated that he placed the Defendant on the ground because she was "concealing and tampering with evidence" and that placing her on the ground was less likely to harm her. Deputy Johnson said that once the Defendant was on the ground, he could not find the plastic bag and thought she had placed the bag in her pocket or "behind her pants." He stated that he opened the Defendant's hand and found a pill, that he did not find the plastic bag, and that it was possible the Defendant placed her hands inside the back of her pants while handcuffed. He thought that he had to use force to open the Defendant's hand. He said that the Defendant repeatedly denied having a bag and that he asked Sergeant Allman to request a female deputy to search the Defendant.

Deputy Johnson testified that he momentarily walked away from the Defendant, that Sergeant Allman began pointing at the Defendant's hands, that Deputy Johnson saw the bag again, and that he removed the bag from the Defendant's hand. Deputy Johnson said that the Defendant gripped the bag tightly and that he had to utilize a pressure point

to force her to release her grip. Deputy Johnson did not remember if the bag tore when he removed it from the Defendant's hand. He denied that any marijuana fell from the bag on the ground and that any fell into the Defendant's pants. Deputy Johnson said that he recognized the contents of the bag as marijuana. Deputy Johnson stated that he told Deputy Witt he could charge the Defendant with evidence tampering. Deputy Johnson said that he thought the Defendant was tampering with evidence because she was trying to hide it.

On cross-examination, Deputy Johnson testified that he did not remember whether he placed the Defendant's purse on the hood of the police cruiser. Deputy Johnson thought that he asked the Defendant to give him anything she held and whether she had anything illegal, although he was unsure. Deputy Johnson did not know whether Deputy Witt or the other officers read the Defendant her rights when she was detained. Deputy Johnson agreed that although he did not recall anyone asking the Defendant whether she had anything illegal, his "reaction" was to use force and strong language to place her on the ground. He said that generally, he did not use force on a compliant person and that his adrenaline was high. Deputy Johnson stated that male deputies were permitted to perform a very limited pat-down of a female but that unless he saw a potential weapon, he did not "like taking that chance." Deputy Johnson said that when he initially placed the Defendant on the ground, he did not find the plastic bag. When asked whether he told Deputy Witt to charge the Defendant with evidence tampering before the bag or pill had been found, Deputy Johnson said that he did not recall whether they had found the pill at that time. Deputy Johnson stated that he did not see Deputy Witt drop something on the ground and scrape it with his foot and that Deputy Witt did not mention it to him.

Upon this evidence, the Defendant was convicted of tampering with evidence, misdemeanor possession of marijuana, misdemeanor possession of alprazolam, and possession of drug paraphernalia. This appeal followed.

As a preliminary matter, the November 13, 2015 sentencing hearing transcript reflects that at the conclusion of the hearing, defense counsel made an oral motion for a new trial. The following exchange occurred:

> THE COURT: [Y]our oral motion is made here. You'll be permitted to supplement that with a written motion for new trial[.]
>
> . . . .
>
> [Counsel]: Did The Court just wish to set a deadline for us to file a written version of a motion for a new trial? . . . . I think I could have it done before December 15th.

THE COURT: That's exactly what I was thinking. Let's have it done by 12/15/15, and the State to respond by . . . January 4[.]

The thirty-day requirement for filing a motion for a new trial in Tennessee Rule of Criminal Procedure 33(b) is mandatory and cannot be extended. *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004); *see* Tenn. R. Crim. P. 45(b)(3). A trial court does not have jurisdiction to determine the merits of an untimely motion for a new trial, and this court is not authorized to waive the untimely filing of a motion for a new trial. *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997); *see State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989); *State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1981).

The record reflects that the judgments were filed on November 13, 2015. The thirty-day period to file the Defendant's motion for a new trial lapsed on December 13, 2015. However, because December 13 fell on Sunday, the motion had to be filed no later than December 14. The Defendant's motion was not filed until December 15 and was untimely, regardless of the trial court's statement at the sentencing hearing. Although trial counsel and the trial judge characterized the December 15, 2015 written motion as an "amendment" or supplement with a filing deadline set by the court, Tennessee Criminal Procedure Rule 33 requires the filing of a written motion, and no provision exists for substituting an oral motion for a written motion. The oral motion for a new trial did not comply with the Rules of Criminal Procedure, and the court was not authorized to schedule the deadline for filing the written motion beyond the thirty-day period articulated in Rule 33.

The issues raised in the Defendant's untimely motion for a new trial are considered waived, except sufficiency of the evidence and sentencing. *See Bough*, 152 S.W.2d at 460; *see also* T.R.A.P. 3(e). Furthermore, an untimely motion for a new trial will generally result in an untimely notice of appeal, but the notice of appeal is not jurisdictional and may be waived in the interest of justice. *See* T.R.A.P. 4(a) (stating that the notice of appeal shall be filed within thirty days after entry of the judgment from which a defendant appeals). The Defendant's untimely motion for a new trial resulted in an untimely notice of appeal, but we waive the timely filing in the interest of justice and will consider sufficiency of the evidence and her sentencing issues.

# I

## Suppression

The Defendant contends that the trial court erred by denying her motion to suppress the evidence obtained as a result of Deputy Witt's search of her person and purse. She argues that she was in custody at the time of the searches and that the warrantless searches were not supported by probable cause or subject to any exception to

-7-

the warrant requirement. The State responds that the Defendant's motion for a new trial was not timely filed and that as a result, this issue has been waived. As we stated above, the Defendant has waived this issue by filing an untimely motion for a new trial, and we do not discern plain error. *See State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994).

## II

### Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support her tampering with evidence conviction, arguing that she only created a minimal delay in the deputies' discovery of the marijuana and pill. She does not contest the sufficiency of the evidence relative to her other convictions. The State responds that the evidence is sufficient.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

 "A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-16-503(a) states, in relevant part,

It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to . . . [a]lter, destroy, or conceal any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding[.]

In *State v. Hawkins*, 406 S.W.3d 121, 138 (Tenn. 2013), our supreme court held that the defendant's tossing a shotgun over a fence did not constitute tampering with evidence because the evidence retained "full evidentiary value," "was not altered or

destroyed," and "its discovery was delayed minimally, if at all." The court also noted that "'[a]ll [the defendant] attempted to conceal was the fact of his possession of the evidence—not the evidence itself.'" *Id.* at 137 (quoting *State v. Lasu*, 768 N.W.2d 447, 452 (Neb. 2009)). This court has applied *Hawkins* in two cases to conclude that when a defendant hid a small bag of marijuana in his mouth and eventually spit out the bag in front of officers, the defendant did not tamper with evidence. *See State v. Christopher Demotto Linsey*, No. M2015-01851-CCA-R3-CD, 2016 WL 5416369 (Tenn. Crim. App. Sept. 27, 2016), *no perm. app. filed*; *see also State v. Elahu Hill, Jr.*, No. W2015-00688-CCA-R3-CD, 2015 WL 6522834 (Tenn. Crim. App. Oct. 28, 2015), *no perm. app. filed*.

In *Elahu Hill, Jr.,* the defendant initially denied having contraband, but when asked specifically whether he had marijuana in his mouth, he spit out a bag containing marijuana. This court concluded that

> the Defendant's actions did not prevent the disclosure of the marijuana or place it out of sight of the officers; the Defendant exposed the item to the officers' view, and they were able to retrieve the evidence. The Defendant's alleged concealment 'delayed minimally, if at all,' the officers' discovery of the marijuana. *See* [*Hawkins*, 406 S.W.3d at 138]. Moreover, there was no proof that the Defendant's act of putting the baggie into his mouth impaired the availability of the marijuana as evidence against the Defendant. Officers collected the baggie and sent it to the crime lab, and the State offered the recovered evidence against the Defendant at trial."

*Elahu Hill, Jr.*, 2016 WL 5416369, at *4.

In this case, the State's closing argument reflects that the State's theories relative to evidence tampering were that the Defendant tore the plastic bag, concealed the plastic bag in her hand or her pants, and scratched the white pill to remove a portion of its lettering. In the light most favorable to the State, although Deputy Witt testified that the white pill was missing some of its identifying letters, no evidence was offered showing that the Defendant scratched off the letters or that she did so after she was stopped by the police. Deputy Witt also testified that he only recovered one-half of a white pill, which would logically suggest that some of the letters would be missing. Agent Stoner did not indicate that the missing letters impeded her testing in any way, and she testified that she had no difficulty identifying the pill. The evidence was recovered and analyzed without difficulty, and it was used as evidence at the trial. The evidence is insufficient to prove that the Defendant altered the pill in any way or that her conduct impaired its evidentiary value.

Relative to the bag of marijuana, the record reflects that the Defendant was handcuffed and Deputy Johnson saw a plastic bag in her hand. The deputies could not remember with certainty whether any of them asked the Defendant if she had any

contraband on her person before they placed her on the ground. When Deputy Johnson placed the Defendant on the ground and opened her hand, he could not find a plastic bag and instead found a white pill. Although the Defendant denied having a bag, after a few minutes, Sergeant Allman began pointing at the Defendant's hands, and Deputy Johnson saw the plastic bag again. Deputy Johnson used force to make the Defendant release the bag, which contained marijuana. Deputy Johnson testified that he thought the Defendant had placed the bag inside her pants, but none of the officers observed her putting the bag in her pants or retrieving it from her pants. Similarly, the deputies said they did not know how the bag became torn.

The Defendant's actions only slightly delayed the discovery of the marijuana. Her conduct did not impair the marijuana's evidentiary value, its availability for testing, or its use at trial. The marijuana was analyzed and introduced as evidence against the Defendant. Similar to the defendant in *Hawkins*, the Defendant's attempting to scatter the marijuana on the ground would have been an attempt at abandonment intended to conceal the Defendant's possession of the marijuana, not the evidence itself. *See* 406 S.W.3d at 137. Therefore, we conclude that the Defendant's momentarily hiding the bag of marijuana in her hand or her pants neither prevented the deputies from finding it nor from its being tested and used against her at the trial. We note that a female deputy had been called and would have conducted a pat-down search of the Defendant and that the marijuana inevitably would have been discovered at that time. We also note that although the Defendant was in custody when this incident occurred, she had not been informed that she was under arrest. The deputies could not remember with certainty—and the recording does not reflect—whether they asked the Defendant if she had contraband. She was under no obligation to turn over items in her pockets incriminating herself, and she was under no obligation to confess to unlawful possession of a controlled substance. To require otherwise would run afoul of our federal and state constitutional protections. Her conduct was merely to conceal her possession of the substance, not the substance itself. *See id*. The evidence is insufficient to support the Defendant's conviction for tampering with evidence. We reverse the judgment, vacate the conviction, and dismiss the charge.

## III

### Sentencing

The Defendant contends that her fifteen-year sentence for tampering with evidence is excessive. She does not contest the sentences for her other convictions. The State responds that the trial court did not abuse its discretion. Although we have vacated the Defendant's conviction and dismissed the charge, we will consider the issue.

At the sentencing hearing, Sherry Gaston, the presentence investigator, testified that the Defendant scored twelve out of fourteen in a risk assessment, placing the

Defendant at maximum potential to reoffend. Ms. Gaston discussed the Defendant's previous convictions and identified certified copies of the judgments, which were received as exhibits. The judgments reflected that the Defendant had fifteen prior felony convictions and nine prior misdemeanor convictions. The judgments also reflected three previous violations of probation and two parole revocations. A July 1, 2010 computer printout, which Ms. Gaston identified as being from the parole officer system, stated that within approximately ten months of one release on parole, the Defendant had three new charges and two parole violation hearings, missed one "face," and had been unable to maintain employment. The Defendant's parole had been revoked. Another printout stated that after about seven months after a second release on parole, the Defendant failed drug screens for cocaine and marijuana, lied about her employment status, was caught shoplifting, missed meetings with her parole officer, and moved to a different county without informing her parole officer. Her parole again had been revoked.

On cross-examination, Ms. Gaston testified that the risk assessment was comprised of ten questions relative to the Defendant's age, drug use, and previous convictions. She said that she scored the questions using guidelines. She agreed that some of the Defendant's convictions stemmed from offenses committed in the same twenty-four-hour period. She said that the Defendant reported alcohol use beginning at age fifteen, that the Defendant said she committed crimes while under the influence of alcohol, and that the Defendant reported marijuana use beginning at age sixteen. Ms. Gaston agreed that no evidence indicated the Defendant had been offered drug or alcohol treatment and said that the Defendant reported never having been to a treatment program.

Ms. Gaston testified that she also worked as a probation officer and that she did not have enough experience to have an opinion about the efficacy of drug and alcohol treatment programs. She said that she was able to confirm some of the Defendant's employment history. Ms. Gaston stated that in 2007, the Defendant's parole was violated due to new charges and "technical violations," although the charges were later dismissed.

On redirect examination, Ms. Gaston testified that she encouraged probationers to speak to her about drug and alcohol treatment before failing a drug screen and that she could refer them to a social worker. The court took judicial notice that the Tennessee Department of Correction had "wonderful drug treatment programs." Ms. Gaston stated that the Defendant was age nineteen at her first conviction, that she was age thirty-five at the time of the sentencing hearing, and that the Defendant reported an aggregate six-month work history during the previous sixteen years.

The Defendant testified that she had memory problems as a result of a head injury she sustained in April before the sentencing hearing, that she informed Ms. Gaston about her memory problems, and that she had additional work experience not reflected in the presentence report. She said that when she was employed, she was better able to fight her drug addiction. The Defendant submitted a written statement to the trial court, which

-11-

reflected the Defendant's remorse for causing her family pain, particularly her children and her parents, her desire to be present for her children, and her desire to complete drug and alcohol treatment. The Defendant stated that she struggled with marijuana and alcohol use and that she had abused prescription medication previously. She said that she had attended substance abuse classes in prison but did not qualify for a "therapeutic community" program or inpatient treatment. She said that she thought inpatient treatment was vital for her and that she was ready to change her life.

On cross-examination, the Defendant testified that she had two children ages sixteen and thirteen and that her parents had obtained custody of them when she went to prison in the early 2000s. She said that she had only taken one drug test, which she failed. She stated that she asked one of her probation officers for drug treatment. She said that she had taken every drug class available to her in the Department of Correction. She acknowledged that after she lost custody of her children, she continued to make bad decisions and that she had to hit "rock bottom" to realize the consequences of her actions. She acknowledged that she had charges pending that occurred after the conduct in the present case. She said that she had been to Narcotics Anonymous classes with a friend but that she did not think a drug treatment class should be religious. She said she went to church regularly. She said that despite her prior felony convictions and parole violations, she felt she deserved help.

Armetta Murdic, the Defendant's mother, testified that the Defendant did not commit crimes when the Defendant lived with her, that it had been very difficult for the Defendant to find employment due to the length of the Defendant's incarceration, and that she had spoken to people about the Defendant's attending school and long term drug and alcohol rehabilitation. Ms. Murdic said that she had seen a change in the Defendant, that she believed the Defendant was ready to change, and that the Defendant needed inpatient treatment for alcohol abuse. Ms. Murdic stated that a landscaping business was willing to hire the Defendant if the Defendant received alternative sentencing. A letter from the landscaping business was received as an exhibit. Ms. Murdic said that the Defendant could live with Ms. Murdic, her husband, and the Defendant's children, that Ms. Murdic would ensure the Defendant followed the rules of probation, that Ms. Murdic would not "cover" for the Defendant if she broke the rules, and that Ms. Murdic would provide transportation to a treatment program.

On cross-examination, Ms. Murdic testified that the Defendant had worked for the landscaping company previously and that she did not know if the Defendant was employed when she committed the instant offenses. She said that she and the Defendant had discussed the Defendant's alcohol and drug problems, that the Defendant did not realize a drug program could help her when she was younger, and that the Defendant had "had lots of time to think" and was ready to change. Ms. Murdic stated that the Defendant had been badly beaten a few months before the sentencing hearing.

-12-

The trial court stated that it had reviewed the file, the witness testimony, the exhibits, the presentence report, and the sentencing statistics. The court noted that it relied on the summary of the facts in the presentence report, which stated that after being removed from the car, an officer "observed that [the Defendant] had a clear baggy with a green leafy substance . . . in her hand. She was ripping it in an attempt to get rid of the evidence." The court found that the Defendant was "not merely just concealing evidence, it goes above and beyond. She was trying to make the evidence no longer available for law enforcement." The court found that the Defendant had lied to the police about having any other contraband and that the Defendant had a digital scale and other bags of marijuana, snort straws, rolling papers, and a purple capsule containing three pills.

The trial court credited Ms. Gaston's testimony and found that the Defendant's prior convictions "show a continuous period of criminal behavior from age nineteen through the present." The court found that when the Defendant was released on parole or probation, she committed new offenses and technical violations that resulted in revocations and reinstatements of her sentences. The court found that the Defendant had served time at two prisons and that she had been classified as a maximum risk to reoffend. The court found that the Defendant reported long-term alcohol and drug dependency and that the Defendant had access to treatment during her previous confinement, although she did not qualify for a therapeutic community. The court found that the Defendant completed a substance abuse class in prison. The court noted that the Defendant appeared healthier than she had at her bond revocation hearing in August before the sentencing hearing. The court found that the Defendant did well under periods of confinement and "perhaps . . . had an attitude change" regarding her desire to change her life.

The trial court found that the Defendant's employment history was sporadic and poor. The court found that the Defendant was "articulate," that her writing style showed "great intelligence," and that the Defendant had "squandered" her potential. The court also found that the Defendant's previous head trauma and alcohol and drug use affected her memory. The court noted that the Defendant's parents had custody of her two teenaged children and that the Defendant did not attend Narcotics or Alcoholics Anonymous meetings because the groups discussed religion instead of drug treatment. The court noted its belief that drug treatment necessarily had a spiritual or religious aspect, without which a person was not capable of "true change." The court opined that every person deserved help.

The trial court credited Ms. Murdic's testimony and found that Ms. Murdic had secured a job for the Defendant, that Ms. Murdic wanted the Defendant to undergo long-term drug treatment and attend school, and that Ms. Murdic had seen a change in the Defendant, indicating the Defendant was ready to receive help.

-13-

The trial court found that the Defendant had fifteen prior felony convictions and nine misdemeanor convictions. The court found that some of the forgery convictions occurred within twenty-four hours of one another and that for purposes of determining the Defendant's sentencing range, she had twelve eligible felony convictions. The court found that the Defendant was a Range III, persistent offender with a punishment range of ten to fifteen years.

The trial court considered the purposes and principles of sentencing and the arguments relative to sentencing alternatives. The court found that the Defendant had been given many opportunities to rehabilitate herself within the community, although her drug treatment had been "minimal." The court also found that the Defendant's criminal history indicated a clear disregard for the laws and morals of society. The court noted that the Defendant had many convictions in addition to those used to establish her sentencing range, that she did not qualify as an offender "at the low end of the range," and that any potential sentence would be greater than ten years. The court concluded that the Defendant was not eligible for probation. Relative to the nature of the criminal conduct, the court found that the Defendant had been convicted of drug offenses, three of which were misdemeanors, and that the tampering with evidence conviction was a felony and "the governing statute here."

Relative to mitigating factors, the trial court declined to apply factor (1), that the Defendant's conduct neither threatened nor caused serious bodily injury. *See* T.C.A. § 40-35-113(1) (2014) ("The defendant's criminal conduct neither caused nor threatened serious bodily injury[.]"). The court found that "[a]ny time someone tries to conceal things from law enforcement, it creates a very dangerous situation . . . . Those [o]fficers could have felt as though she was bringing out a knife or a gun . . . and taken action to defend against that[.]" The court found that factor (13), the "other factors" category, applied because the Defendant requested drug treatment. *See id*. § 40-35-113(13) ("Any other factor consistent with the purposes of this chapter[.]").

Relative to enhancement factors, the trial court found that the Defendant had a history of criminal convictions and behavior in addition to those necessary to establish her sentencing range. *See id*. § 40-35-114(1) (Supp. 2015) (Amended 2016, 2017) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"). The court found that the Defendant had, before trial and sentencing, failed to comply with the conditions of probation and parole. *See id*. § 40-35-114(8) ("The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community[.]"). The court found that at the time she committed this offense, the Defendant had been released on bond. *See id*. § 40-35-114(13) ("At the time the felony was committed . . . the defendant [was r]eleased on bail or pretrial release[.]").

-14-

The trial court noted that it considered statistical information relative to sentencing for Class C felonies. The court stated that it placed "heavy weight" on the Defendant's sentencing range and "the sentencing considerations." The court found that confinement was necessary to protect society from the Defendant, who had a long history of criminal conduct. The court also found that confinement was necessary to avoid depreciating the seriousness of the offense and to provide an effective deterrent to others. The court found that measures less restrictive than confinement had been frequently or recently applied unsuccessfully to the Defendant. The court sentenced the Defendant to fifteen years for the tampering with evidence conviction and to eleven months, twenty-nine days for each of the misdemeanor convictions. The court declined to order consecutive service.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors are reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id*.

Although we have vacated the Defendant's tampering with evidence conviction for insufficient evidence, the record reflects that the trial court considered all the necessary sentencing factors and principles of sentencing in rendering its decision. The fifteen-year sentence was within the sentencing range, and the Defendant's extensive criminal history provided ample basis for imposing the maximum sentence. In addition, the Defendant committed the offenses while she was on bond for another offense, and she had previously failed to abide by the conditions of multiple periods of probation and parole. The court did not abuse its discretion by imposing the maximum sentence or by ordering confinement. The Defendant is not entitled to relief on this basis.

Finally, we note that the judgments for Counts 1, 2, and 3, possession of marijuana, possession of alprazolam, and possession of drug paraphernalia, reflect checked boxes indicating that the Defendant pleaded guilty and also that the Defendant was found guilty after a jury trial. Therefore, we remand this case for the entry of corrected judgments to reflect the Defendant's convictions were the result of a jury trial.

In consideration of the foregoing and the record as a whole, we reverse the judgment of the trial court relative to the tampering with evidence conviction, vacate the conviction, and dismiss the charge. Although the Defendant's remaining convictions are affirmed, we remand for the entry of corrected judgments.

_____
ROBERT H. MONTGOMERY, JR., JUDGE